JOSEPH J. MULLINS, Retired Circuit Judge.
The appellant, Anthony Jones, was indicted by the grand jury of Macon County for robbery in the first degree. He entered a plea of not guilty, and was found guilty of robbery in the first degree as charged in the indictment. He was sentenced under the Alabama Habitual Felony Statute to the penitentiary of the State of Alabama for a term of his natural life without possibility of parole, and he appeals to this Court.
The appellant was, at all proceedings in the trial court, and is, in this Court, represented by the same counsel appointed by the trial court. This appeal was submitted to this Court on briefs.
The appellant contends in his brief that the trial court erred to his prejudice on three grounds: First, by overruling appellant’s motion to exclude state’s evidence; second, by refusing to give written requested jury instructions 1-8; third, by overruling appellant’s motion for a new trial.
State’s evidence tended to prove that on September 7, 1981 Mr. Mindingall, the injured party, lived at 110-C Sojourner Apartments in Tuskegee, Macon County; that he was sitting on Mr. Howard’s porch across the courtyard visiting with, and having a social drink with Mr. Howard and a friend, when the appellant, Anthony Jones, came up; that at about 4:00 or 4:30 he went home to cook something to eat; that it was hot weather, and he did not lock his front door; that the appellant followed him home, came in Mr. Mindingall’s apartment behind him, and put a big knife next to his throat, and said give me your money; that Mindingall grabbed the arm of the appellant, and the appellant cut him, and then went back to his throat, and got Mindin-gall’s money, $47.00, and pocketbook; that the appellant cut him two more times, and took his watch; that the watch and money were worth over $247.00; that he was positive the appellant was the person who took his pocketbook, money and watch; that Mindingall bled real bad from the cuts, and blood was all over his house, and he went to the hospital and was sewed up; that he had been drinking , but was not drunk.
State’s witness LaFayette Howard, testified, in substance, that on September 7, 1981, he lived at C-106 Sojourner Apartments across the courtyard from Mr. Min-dingall; that Mindingall and some friends of Mr. Howard were sitting on his front porch having a social drink when the appellant came up; that when Mindingall left to go home to get a bite of food, the appellant followed him; that he had known the appellant three or four years; that the appellant followed Mr. Mindingall into his apartment, and in a few minutes came out and waved his hand at us and left; that as soon as appellant left, Mr. Mindingall came out of his • apartment and over to Mr. Howard’s apartment, at which time he was bloody as a hog; that no one else came out of Mindin-gall’s apartment; that he went over and looked in Mindingall’s apartment and saw blood all over every one of the rooms, bathroom and everywhere in there, and towels in the sink as bloody as they could be; that when Mr. Mindingall left Howard’s house to go home, he had a watch, and when he came back bloody, he did not have the watch on.
State’s witness Johnny H. Willis, testified, in substance, that on September 7, 1981 he was a police officer employed by the City of Tuskegee; that about 7:28 P.M. he went to C-110 Sojourner Apartments where Mindingall lived; that Ernestine Minnifee, LaFayette Howard, and George Mitchell were there; that Mr. Mindingall was nursing an injury to his lower left arm; that there was blood on the dressing he had on his arm, on the floor in the bedroom, in *957 the middle of the bed, in the bathroom; that there was a large puddle of blood on the floor near the commode, and drippings in the hallway; that Mindingall complained that the appellant had rolled him, and taken his pocketbook, and two twenty dollar bills; that several days later he saw and arrested the appellant; that in his opinion Mindin-gall had been drinking and was drunk; that Mindingall had no problem in relating exactly what had happened.
The state rested, and there was a recess for lunch. Upon resuming the trial, the court allowed the state to reopen its case, whereupon, state’s witness, Ernestine Min-nifee, testified, in substance, that on September 7, 1981, at about 4:00 o’clock, she was at Mr. Howard’s apartment on the front porch having a drink with Mr. Howard and some friends; that they were drinking, but were not drunk; that Mr. Mindingall was there, and got up to go across the courtyard to his apartment; that the appellant was there, and when Mindin-gall left, the appellant left and followed Mindingall until they both went into Mr. Mindingall’s apartment; that in ten or fifteen minutes the appellant came out of Mindingall’s apartment and waved his hand; that he was almost running when he left; after appellant left, Mindingall came over to Mr. Howard’s house and was bloody; that he had three cuts on his arm, one on his shoulder, and two on his wrist; that they stopped his bleeding, and went over to Mindingall’s house, and called an ambulance and the police; when she went over to Mindingall’s house, she saw blood in every room, hallway, bedroom, bathroom, and kitchen; that Rose Davis and her boy friend brought the appellant down there to Mr. Howard’s house; that she did not see anyone else go into Mindingall’s house except him and the appellant. State rested its case, and the appellant moved to exclude state’s evidence on the ground that it was insufficient to make out a prima facie case against the appellant.
Mr. Robert Sheppard, a witness called by the appellant, testified that on September 7, 1981, he picked the appellant up and took him down to the Sojourner area selling watermelons; that he did see Mr. Mindin-gall, who asked him to go and get some beer, and that Mr. Mindingall was unsteady, and his speech was slurred. Later, he told Mrs. Rose Davis to take Mr. Mindin-gall a watermelon. Mr. Sheppard stated that the appellant was in his sight all the time he was down there, except for about twenty minutes, or less, and the appellant was not wearing a hat on that day.
Rose Davis, a witness called by the appellant, testified that she went down to Sojourner Apartments area selling watermelons with Mr. Sheppard. That on their way, they picked up the appellant. That Mr. Howard told her to take a watermelon to Mr. Mindingall. She took a watermelon to Mr. Mindingall, who offered her some liquor he was drinking. She refused the liquor, and told him she “only drinked beer.” He followed her out of the apartment trying to put his shoes on, and went to the truck and asked Mr. Sheppard to take him to get some beer. Mr. Mindingall appeared to have been drinking heavily. The appellant was out of their company only briefly, about twenty to thirty minutes. The appellant offered no other evidence.
The appellant’s first contention in his brief is that the trial court erred to his prejudice by overruling his motion to exclude state’s evidence on the ground the state has failed to prove a prima facie case. Robbery in the first degree is defined by Code Of Alabama, 1975, Sec. 13A-8-41. Robbery in the first degree.
“(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument; or
“(2) Causés serious physical injury to another.
“(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defend *958 ant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
“(c) Robbery in the first degree is a Class A felony.”
Sec. 13A-8-43. Robbery in the third degree.
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
“(b) Robbery in the third degree is a Class C felony.”
If any facts are proven from which the jury may reasonably infer that a robbery has been committed, and that the appellant was the perpetrator of the robbery, the trial court is under a duty to submit the question to the jury. It is not the duty of the trial court to declare that the state’s evidence is untrue, and this Court does not have the authority to do so. If there is sufficient evidence before the jury to prove that the crime charged in the indictment has been committed, and that the appellant perpetrated the crime, it is the duty of the jury, and only the jury, to decide the weight they will give the testimony of the witnesses.
We hold that the evidence of the state is sufficient to sustain the jury’s verdict, and that the trial court did not err to the prejudice of the appellant when it overruled appellant’s motion to exclude state’s evidence. McCord v. State, Ala. Cr. App., 373 So.2d 1242; Code Of Alabama, 1975, Sec. 13A-8-41 and 43; Hayes v. State, Ala. Cr. App., 412 So.2d 1252; Foust v. State, Ala. Cr. App., 414 So.2d 485; Allen v. State, Ala. Cr. App., 414 So.2d 163; Gosha v. State, Ala. Cr. App., 389 So.2d 563; Joshua v. State, Ala. Cr. App., 372 So.2d 885; Cert. Den., Ala., 372 So.2d 891.
The appellant’s second contention in his brief is that the trial court erred to his prejudice by refusing to 'give his written requested jury instructions numbers 1 through 8. We have searched the record in this case and do not find that the appellant objected to the trial judge’s refusal to give the written requested jury instructions, and state his grounds, before the jury retired to consider its verdict. In the case of Allen v. State, Ala. Cr. App., 414 So.2d 989, at page 992, Judge Tyson, speaking for this Court, said:
“It is, therefore, our conclusion that the ‘automatic exception’ to refused requested written charges no longer exists.’ ”
“The proper procedure for preserving the right to assert error on appeal is for the affected party to object and state his grounds before the jury retires, just as is done for alleged errors in the trial court’s oral charge.
“The primary reason for requiring an exception after the trial court’s oral charge and before the jury retires is that such requirement might expedite a satisfactory conclusion of the case. Possible errors by the trial court such as inadvertent omissions in its oral charge or refusals of written’ charges which deal with crucial issues should be brought to the attention of the trial court so that it might cure such errors at that level. This would only improve a defendant’s chances for a favorable verdict. Also, if counsel are encouraged to question the trial court’s refusal of their written charges at the trial level, they might be allowed to correct charges with spelling errors, typographi- . cal errors, and misstatements of the law, charges which are currently losers at the appellate level.”
The Supreme Court, speaking through Justice Maddox, in affirming the Court of Criminal Appeals, Ex Parte Allen, Ala., 414 So.2d 993, on pages 994-995, said:
“Because the automatic exception provision has been eliminated from the 1975 Code, it is our considered opinion that the *959 Court of Criminal Appeals was not required to notice any alleged error or defect in this criminal proceeding, which was under review unless the alleged error or defect was brought to the attention of the trial court. It is only in death cases that the automatic exception has been preserved.”
We hold that we are not required to review the merits of the appellant’s assertions on this appeal because in Alabama there is no automatic exception, except in death cases, to the trial court’s refusal of a written requested jury instruction. The appellant did not reserve an exception at the trial below. Allen v. State, Ala. Cr. App., 414 So.2d 989; Ex Parte Allen, Ala., 414 So.2d 993.
Appellant’s third contention in his brief is that the trial court erred to his prejudice in denying appellant’s motion for a new trial on the grounds that state’s evidence has failed to prove a prima facie case.
Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain the verdict of the jury, the overruling of a motion for a new trial on the ground of the insufficiency of the evidence is not reversible error. McHellen v. State, Ala. Cr. App., 351 So.2d 689; Young v. State, 283 Ala. 676, 220 So.2d 843.
State’s evidence was sufficient to present to the jury the question as to whether or not the appellant committed the crime which he was charged with and convicted of. We hold that the trial court did not err in overruling appellant’s motion for a new trial on the ground that the state’s evidence failed to prove a prima facie case. Miller v. State, 291 Ala. 132, 279 So.2d 115; Stewart v. State, Ala. Cr. App., 405 So.2d 402; Miles v. State, 257 Ala. 450, 59 So.2d 676; Cox v. State, Ala. Cr. App., 363 So.2d 1054.
The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable JOSEPH J. MULLINS, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.